# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AARON DEVON FOOTES, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-17-1192 |
| WARDEN FRANK B. BISHOP, JR., *et al*., | * | |
| Defendants | * | |

## MEMORANDUM OPINION

State inmate Aaron Devon Footes filed the above-captioned civil rights complaint stemming from his protracted placement in administrative and disciplinary segregation while incarcerated at the North Branch Correctional Institution (NBCI). Also pending is Footes' Motion to Appoint Counsel (ECF No. 21), Motions for Preliminary Injunction arising from the institution's actions taken in January 2018 in response to Footes' inmate assault (ECF No. 27), and for a medical examination. ECF No. 20. For reasons more fully discussed below, the Court denies Footes' Motions for Injunctive Relief. The Court also denies Footes' Motion to Appoint Counsel as he has demonstrated the ability to present his claims sufficiently. Finally, the Court denies Defendants' Motion without prejudice to refile once the Court ascertains Footes' current incarceration status.

**I. Background**

In March of 2016, Footes was an inmate housed at NBCI. NBCI reassigned Footes from general population to administrative segregation after he had been badly beaten by another inmate. NBCI served Footes rule-violation notices and relocated him to disciplinary segregation pending adjustment. ECF No. 1-2. Footes was eventually acquitted of the rule violations and transferred from disciplinary to administrative segregation pending investigation. *Id*. For over a

year, Footes remained on administrative segregation, which prompted his filing this Complaint. *Id.*

Footes thereafter supplemented his Complaint wherein he clarified that NBCI had not provided any explanation for his continued placement in administrative segregation; that NBCI performed an inadequate investigation as to why he was in segregation; and that both the placement and continued confinement on administrative segregation violated his constitutional rights as well as Division of Corrections' policies. ECF No. 14. Footes asserts that he has suffered adverse health effects and denial of programming or opportunities to earn diminution of confinement credits. *Id.* As relief, Footes seeks compensatory damages and a regional transfer. ECF No. 1-3.

On October 18, 2017, Defendants moved to dismiss Footes' claims, or in the alternative, for summary judgment granted in its favor. ECF No. 17. In support, Defendants contend that even though Footes was found not guilty of assault in 2016, he was placed in administrative segregation because his assailants were suspected of membership in Murder, Inc., a Security Threat Group (STG). ECF No. 17-7, ¶ 5 (Lt. Barnhart Decl.). More particularly, NBCI's Intelligence Unit requested Footes' placement on administrative segregation to address concerns for his personal safety and the likelihood that Footes would be in danger if returned to general population. *Id.*, ¶¶ 6-7. Defendants further note that the institution has since conducted periodic case-management reviews concerning this placement, and that as of June of 2016, Footes requested transfer to another institution based on the stated concerns for his safety at NBCI. ECF No. 17-10, ¶¶6, 7 (McMahan Decl.); ECF No. 17-9, at pp. 4, 6 (Confidential Case Management Notes).

As a result of the investigation, NBCI correctional staff believed that Footes was a member of Murder, Inc. and that the March 2016 fight arose because Footes had fallen out of favor with the Group.[1] ECF No. 17-8, pp. 5, 8. The investigation further revealed that Footes intended to seek revenge on certain group members. *Id*. The Intelligence Unit recommended Footes' transfer to another institution, namely Jessup Correctional Institution (JCI). *Id.* JCI was contacted in January of 2017, regarding a transfer. *Id*., pp. 8, 10-13. In a supplemental pleading, Defendants informed the Court that although Footes had been approved for placement onto the JCI transfer list, transfer was rescinded because a verified enemy of Footes was also housed at JCI. ECF No. 25-3, ¶ 7, 25-4. The Western Correctional Institution (WCI) was also ruled out as a viable placement because that institution also housed a number of Murder Inc. members and another of Footes' verified enemies. ECF No. 25-3, ¶ 8. Footes, therefore, remained at NBCI.

In December of 2017, NBCI case management considered reducing Plaintiff's classification status from Maximum to Medium Security, which would have allowed Footes to be transferred to other available state institutions. ECF No. 25-5; ECF No. 25-3, ¶¶ 14, 90. This reclassification process was halted after Footes' case manager learned that Footes had assaulted another inmate on January 8, 2018.[2] ECF No. 25-3, ¶ 11. On February 1, 2018, Footes was reassigned to disciplinary segregation because of the assault, and he remained at Maximum Security classification. *Id*., ¶¶ 13-15. Nonetheless, NBCI continued to look for a safe, alternative institution to which Footes could be transferred. *Id*., ¶ 16.

---

[1] Footes filed an administrative remedy in July of 2017. In response, the Assistant Warden advised Footes that an investigation revealed he had in fact never been validated as a member of a Security Threat Group. Investigation more particularly revealed that Footes had been ostracized from the group and that it was noted, presumably in his base file, that he was previously a "non validated member but is now no longer considered a member of an organization." ECF No. 28-4, at p. 1.

[2] Footes denies this inmate assault. ECF No. 27. If Footes believes that his due process rights were violated during the conduct of those adjustment proceedings, he may file a new civil rights complaint setting forth those allegations.

### B. Footes' Current Housing Status

Footes has notified the Court that around March 20, 2018, he was transferred to the Prince George's County Detention Center for a hearing. ECF No. 29. Footes was also supposed to be transported to JCI pending a court hearing which did not occur, and then was returned to NBCI. ECF No. 30. On April 9, 2018, Footes wrote the Court, again stating that he is housed at the Prince George's County Detention Center pending a hearing, and because he expects to remain at the Detention Center for months, he asked that Court mail be sent to the Detention Center. ECF No. 31.

### C. The Pending Motions

Defendants' dispositive motion will be denied without prejudice subject to renewal once the Court determines Footes' current housing status. Defendants shall advise the Court within thirty days from the issuance of this Opinion whether Footes is currently housed in the Division of Corrections, and if so, where and whether he is in disciplinary or administrative segregation. If Footes is not currently housed in the Division of Corrections, Defendants shall advise what his housing status will be upon his return from the Detention Center. Defendants shall also respond to Footes' allegation that upon the expiration of his disciplinary segregation term, he will be returned to general population. If Footes is to be returned to general population as alleged, Defendants shall explain the basis for the change in his ability to be housed safely in the general population at NBCI. Defendants shall also address what, if any, steps have been undertaken to locate general population housing for Footes either in another state facility or via an Interstate Corrections Compact transfer. Defendants are further directed to respond to Footes' claim that his prolonged stay on administrative segregation has adversely impacted his health. Within thirty days, Footes shall also update the court as to his housing status.

Footes' motions will be denied. Regarding Footes' request for injunctive relief to compel his transfer from NBCI (ECF No. 27), the Court denies the motion as moot in light of Footes' recent supplemental correspondence stating that he is not housed at NBCI currently. To the extent Footes' placement in the future gives rise to similar requests for injunctive relief, Footes may refile his motion.

As grounds for requesting that this Court order Defendants to medically examine him, Footes argued that segregation was negatively impacting his health. *Id*. Defendants were directed to show cause why Footes' motion should not be granted. ECF No. 22. Defendants responded that correctional staff have no personal involvement in providing or directing the health care of inmates and that inmates may seek medical evaluation by completing a sick call slip. ECF No. 24-1, ¶¶ 2 & 3. (Bohrer Decl). Defendants also noted Footes' familiarity with the process for requesting medical care, as Footes had requested medical care for pain in his left big toe and left leg (ECF No. 24-2 at pp. 2-3), a sore throat (*id*., at pp. 6-7), and abdominal pain and constipation (*id*., at pp. 12-13), all within a three-month span. Footes also declined medical evaluation after he was involved in an altercation with another inmate. *Id*. at p. 10. Footes replied that he had submitted several sick calls slips complaining of black outs and his deteriorating health but inexplicably, the slips were not produced. ECF No. 28, at p. 2. Footes also generally disputes that he had ever refused medical care and complains that he was never referred to a provider for his complaints.[3]

A preliminary injunction is an extraordinary and drastic remedy to be used sparingly. *See*

---

[3] Footes' reply belies his contention that correctional staff have interfered with his receipt of medical care and that medical providers have refused to see him. Footes provided an administrative remedy form concerning his medical treatment for a hernia, in which he states that Correctional Officer Zais personally delivered a sick call slip on his behalf to the medical department. ECF No. 28-3, at p. 1. He also explains that Dr. Ashraf Mahboob provided him a hernia belt. *Id*. To the extent that Footes believes he has been denied constitutionally adequate medical care for any of his medical needs, he may file a separate civil rights complaint.

*Munaf v. Geren,* 553 U.S. 674, 689–90 (2008). A party seeking injunctive relief must establish: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

Footes has not sustained his burden of demonstrating that his requested injunctive relief is warranted. As an initial matter, this Complaint concerns disputes arising over Footes' segregation status, *not* adequacy of medical care. Accordingly, even if Footes were to succeed on the merits of his claims, the requested relief would not necessarily include the medical examination he seeks to compel. Rather, it appears that Footes wishes to obtain a medical examination to shore up his damages assertion as to the negative impact segregation has had on his health.

Putting this questionable use of the requested injunctive relief to one side, Footes has failed to demonstrate that a compelled medical examination is necessary to avoid irreparable harm. The evidence presented to the court demonstrates that Plaintiff has access to medical care, and has availed himself of the same. Likewise, given that Footes has access to medical care, the equities do not tip in his favor. Finally, the Court cannot, on the state of the record, conclude

that Footes is likely to succeed on the merits of his initial claims. Accordingly, the Court denies the Motion for Injunctive Relief.

As to Footes' Motion to Appoint Counsel, the Court notes that prisoners pursuing civil rights claims are not automatically entitled to counsel. *Evans v. Kuplinski*, 713 Fed. Appx. 167, 170 (4th Cir. 2017). Further, a court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and to be invoked where an indigent claimant presents "exceptional circumstances." *See Kuplinski*, *id.* at 170; *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Upon careful consideration of Footes' motion and other pleadings, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the Court are not unduly complicated. Therefore, no exceptional circumstances exist at this time to warrant appointment of counsel pursuant to § 1915(e)(1).

A separate Order follows.

| | |
|---|---|
| _____6/12/18_____ | _____/S/_____ |
| Date | Paula Xinis |
| | United States District Judge |