**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

AARON DEVON FOOTES,                    *

Plaintiff                              *

v                                      *          Civil Action No. PX-17-1192

WARDEN FRANK B. BISHOP, JR., *et al.*, *

Defendants                             *
                                      ***

**<u>MEMORANDUM OPINION</u>**

Plaintiff Aaron Devon Footes filed this civil rights complaint challenging his protracted placement in administrative and disciplinary segregation while incarcerated at the North Branch Correctional Institution (NBCI). ECF No. 1. On June 12, 2018, This Court denied Defendants'[1] dispositive motion without prejudice and with leave to refile so that the Court could be apprised of Footes' current housing status. ECF Nos. 32 & 33.

On March 4, 2019, while still housed on administrative segregation at NBCI, Footes moved for Preliminary Injunction. In this motion, he attempted to stop Defendants' intended removal of Footes from a single cell to a double cell with another inmate. ECF No. 46. As grounds for the requested relief, Footes stressed that he was still at risk of harm from an attack by another inmate who has been classified as part of a security threat group (STG). Footes alternatively asked to be transferred out of NBCI. *Id.* Although Defendants opposed the motion (ECF No. 49), Footes was ultimately was transferred to Jessup Correctional Institution (JCI) (ECF No. 52), thus mooting Footes' requested injunctive relief. ECF 53.

---

[1] The Clerk shall amend the docket to reflect that Acting Lt. Barnhart is named as an additional Defendant.

On January 27, 2020, Defendants renewed their dispositive motion, relying on their previous filings and responses to show cause orders. ECF 17, 24, 25 and 49. Footes opposes the dispositive motion. ECF No. 51. The Court has reviewed all pleadings and finds a hearing unnecessary. *See* Local Rule 105.6. (D. Md. 2018). For the following reasons, Defendants' motion, construed as one for summary judgment, is GRANTED.

## I.     Background

This Court has previously recounted the factual and procedural history of Footes' case in great detail and incorporates those recitations here. The Court focuses in this opinion on Footes' housing conditions at NBCI beginning in March 2016. At that time, he was placed in administrative segregation after he had been badly beaten by another inmate. Although Footes had been charged with related infractions, he was eventually acquitted of such charges and transferred from disciplinary to administrative segregation while the facility investigated the beating. *Id.* For over a year, Footes remained on administrative segregation which prompted his filing this Complaint. *Id.*

Footes remained in administrative segregation because his assailants were suspected of membership in Murder, Inc., a Security Threat Group (STG). ECF No. 17-7, ¶ 5 (Lt. Barnhart Decl.). Footes also received the benefit of periodic case-management reviews concerning this placement. ECF No. 17-10, ¶¶ 6, 7 (McMahan Decl.); ECF No. 17-9, at 4, 6 (Confidential Case Management Notes). Ultimately, at the conclusion of the investigation, NBCI determined that Footes once was a member of Murder, Inc. but that he had fallen out of favor with the group, thus prompting the fight. ECF No. 17-8, pp. 5, 8. The investigation also revealed that Footes may have been intending to exact revenge on certain group members, and thus, it was recommended that Footes be transferred to Jessup Correctional Institution (JCI). *Id.*

However, because of other security concerns involving Footes at the time, neither JCI or Western Correctional Institution (WCI) were viable options. ECF No. 25-3, ¶¶ 7-8, 25-4. Footes also was considered for a reduction in security classification while at NBCI, but because he subsequently assaulted another inmate, he landed again in disciplinary segregation with his security classification unchanged. ECF No. 25-5; ECF No. 25-3, ¶¶ 11, 14, 90.

## II.    Standard of Review

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment. Such motions implicate the Court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F.Supp.2d 431, 436-37 (D. Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Footes was placed on notice that Defendants sought summary judgment from their initial pleadings and attached exhibits. *See Moret v. Harvey*, 381 F.Supp.2d 458, 464 (D. Md. 2005). Accordingly, the Court will treat this motion one as for summary judgment.

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should "view the evidence in the

light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## III. Analysis

Defendants raise several grounds for granting summary judgment in their favor. ECF No. 17-1. The Court need not reach them all because relief is warranted for two primary reasons, each discussed in turn.

### A. Eleventh Amendment Immunity

Defendants first contend that they are immune for official capacity claims pursuant to the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or

equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless immunity has been waived or abrogated. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

Footes' claims are brought pursuant to 42 U.S.C. § 1983, for which Congress did not abrogate the states' sovereign immunity. *Will*, 491 U.S. at 66. Nor has the State of Maryland waived immunity under the Eleventh Amendment to suit in federal court. *Cf.* Md. Code Ann., State Gov't § 12-202(a) (limited waiver of sovereign immunity for certain state actions.). Moreover, the State's Eleventh Amendment immunity protections extend to its agents acting in their official capacities. *See Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995).

Footes does not dispute this bedrock principle or that Defendants are agents of a State entity, the Maryland Division of Corrections. Accordingly, Defendants cannot be sued for acts undertaken in their official capacities. Summary Judgment on this liability theory is granted as to all Defendants.

To the extent the Complaint covers Defendants' acts taken in their individual capacities, Footes must generate some evidence that each defendant "acted personally in the deprivation of the plaintiffs' rights." *Vinnedge v. Gibbs*, 550 F. 2d 926, 928 (4th Cir. 1977). Footes cannot proceed under a theory of *respondeat superior* in an attempt to attach supervisory liability for an

agent's deprivation of Footes' constitutional rights. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983). Liability under § 1983 attaches only upon a defendant's personal participation in the constitutional violation. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Of the Defendants, Warden Bishop had no involvement in housing decisions as to Footes. Footes proceeds against Bishop solely on the theory of *respondeat superior* which cannot suffice. Summary Judgment is granted in Bishop's favor as to all claims.

### B.  Individual Liability on Remaining Claims

Footes asserts that Defendants' continued decision to house him in administrative segregation constituted cruel and unusual punishment in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). To succeed in an Eighth Amendment claim based on harsh conditions of confinement, a prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious," and that "subjectively the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson*, 501 U.S. at 302–03 (applying the deliberate indifference standard to conditions of confinement claims); *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow,* 301 F.3d 605, 607 (7th Cir. 2002)).

Even when viewing the evidence most favorably to Footes, he has not demonstrated that his placement in segregation amounted to cruel and unusual punishment. Footes, more particularly, has marshalled no evidence from which a reasonable factfinder could conclude that

Defendants acted with deliberate indifference. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Footes does not meaningfully challenge that he had been in altercations with other high-risk inmates because of their gang affiliation. Nor can Footes dispute that he had been disciplined for assaulting another inmate. That alone provides ample cause for Defendants to take additional precautions when housing Footes.

Footes also cannot prevail simply because administrative segregation visits some form of isolation. As difficult as solitary confinement may be, without more, it does not constitute an Eighth Amendment violation. *See Wishon v. Gammon,* 978 F.2d 446, 449 (8th Cir. 1992); *See also Harris v. Barone,* 2014 WL 2694005 at * 6 (W.D. Pa. June 13, 2014) (lengthy denial of recreation time insufficient). Summary judgment on the Eighth Amendment claims is granted in Defendants' favor.

To the extent Footes challenges the same confinement conditions on Due Process grounds, his claim likewise fails. Where state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the prisoner's liberty interest may be implicated. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "[G]eneral population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015). Where conditions in segregation are "similar in most respects to those experienced by inmates in the general population," no liberty interest exists in avoiding that segregation assignment. *Beverati v. Smith,* 120 F.3d 500, 503-04 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996). Simply put, it is not "atypical" for inmates to be placed on administrative segregation for any number of reasons. *Hewitt v. Helms,* 459 U.S. 460, 468 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life).

Notably, in *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997), the United States Court of Appeals for the Fourth Circuit concluded that six months' in segregation did not amount to an atypical burden compared with ordinary prison life.  The Court so held even though inmates had attested that their cells were "infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above;" that they were "forced to use their clothing and shampoo to clean the cells" and did not "receive clean clothing, linen, or bedding." Such conditions, the Court reasoned, do not implicate a liberty interest sufficient to sustain a due process claim. *Id*. at 504.

The Court accepts as Footes' description of his confinement conditions; he has, no doubt, witnessed violence and been subjected to comparatively harsh discipline.  ECF No. 44 at 6.  But his situation does not nearly approach that which inmates withstood in *Beverati*.   Defendants also undertook periodic reviews and efforts to find alternative placements but had to abandon such transfers for security concerns.  *See Beverati*, 120 F.3d at 504.  On this record, Footes has not generated sufficient evidence to sustain a due process claim.  *See also Davis v. Warden*, 08- AW-2553, 2010 WL 234970, at *2 (D. Md. Jan. 14, 2010) (rejecting due process challenge to administrative segregation at Northern Branch Correctional Institution); *Knox v. Lanham,* 895 F. Supp. 750, 758-59 (D. Md. 1995) (administrative segregation at ECI).[3]

---

[3] Footes recently requested leave to amend his Complaint to add NBCI Case Manager Richard Roderick because Rodrick "had removed [Footes] from any type of lateral transfer and stated that plaintiff can request another transfer on 9/16/2020." ECF No. 44, p. 3.  Footes also appears to challenge anew the conditions of confinement while in administrative segregation.  *Id*. at 6.  Although leave to amend should be granted freely "when justice so requires," amendment may also be denied so to avoid undue prejudice to the opposing party or if amendment is futile.  *See Equal Rights Ctr. v. Niles Bolton Assoc*., 602 F.3d 597, 603 (4th Cir. 2010).  Because the claims fail against Rodrick for the same reasons already discussed, the Court denied Footes' request to add him as a defendant. Similarly, even if accepting Footes' representations as to poor conditions of confinement, none support any of the presently pending constitutional claims.  To the extent Footes intends to somehow raise other constitutional claims, the Court denies the motion as the proposed amendment arrives too late in litigation that had begun over three years ago.  *Id*. at 604; *see also Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987).

**IV.    Conclusion**

Based on the foregoing, the Court grants Defendants motion for summary judgment in their favor.  A separate Order follows.


<u>    July 29, 2020     </u>                          <u>                    /S/                    </u>
Date                                                     Paula Xinis
                                                         United States District Judge